IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CRISTINE ERNSDORFF,<br><br>*Plaintiff,*<br>v.<br><br>JACOBUS ENERGY, LLC<br><br>*Please Serve:*<br>CSC Lawyers Incorporating<br>221 Bolivar Street<br>Jefferson City, MO 65101<br><br><br><br>*Defendant.* | Case No.: |

## COMPLAINT

Cristine Ernsdorff, for her Complaint against Jacobus Energy ("Jacobus"), alleges the following:

## PARTIES

1. Ernsdorff is a citizen of the United States and a resident of Platte County, Missouri.

2. Upon information and belief, Defendant Jacobus Energy is a Wisconsin corporation authorized to do work in the state of Kansas.

## NATURE OF ACTION

3. This action seeks redress for race and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) ("Title VII").

**JURISDICTIONAL BASIS**

4. This Court has primary jurisdiction over the Title VII claims, pursuant to 28 U.S.C. §1331.

5. Defendant Jacobus is located in Wisconsin and is authorized to do business within this district. Accordingly, as the acts complained of herein took place within this district, the venue is proper in this district under 28 U.S.C. §1391.

**ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED**

6. Ernsdorff incorporates by reference the above paragraphs as though set forth separately herein.

7. Ernsdorff filed a Charge of Discrimination (No. 563-2020-01682) with the U.S. Equal Employment Opportunity Commission ("EEOC") for disability and age discrimination and retaliation on April 7, 2020. Ernsdorff was issued a notice of her right to sue for this Charge on September 03, 2020. This complaint has been filed within 90 days of receipt of each. *See* documents attached hereto.

8. Accordingly, Ernsdorff has met all administrative prerequisites prior to filing this action.

**FACTS COMMON TO ALL COUNTS**

9. Ernsdorff started working for Jacobus in January 2018.

10. Ernsdorff is a female born in 1974.

11. For all practical purposes, Ernsdorff was a Senior Market Business Developer for Jacobus Energy.

12. In March 2019, a co-worker, Tom Spurling, made a racial slur in the presence of Ernsdorff and Ms. Cassie Muhlbauer.

13. Ernsdorff spoke with her district manager, Mitch Harsche, about the slur, to which Mr. Harsche responded with words to the effect of "he's old school, and it may be wrong, but it is what it is."

14. Ernsdorff then reported the incident to the human resources manager at the time, Ms. Jackie Valent Lucca. Shortly thereafter, Mr. Spurling was terminated.

15. Ernsdorff was approached by Mr. Jake Jacobus and Mr. Merritt about the termination of Mr. Spurling. Among other things, Ernsdorff shared her concerns about the treatment she feared she might face from Mr. Harsche going forward, as he and Mr. Spurling were close.

16. Indeed, almost immediately following Mr. Spurling's termination, Mr. Harsche's treatment of Ernsdorff worsened. He would generally ignore her and, if that were not an option, would provide curt responses or otherwise try to complicate Ernsdorff's work.

17. Ernsdorff informed her management team of Mr. Harsche's behavior, as it was clear that she was being singled out by him because of her complaint regarding racism.

18. Mr. Harsche did not treat other males in the same fashion he treated Ernsdorff.

19. For instance, Mr. Merritt commented directly to Ernsdorff to "quit wearing your hair in a bun; men don't like seeing a bun. They prefer a woman's hair down."

20. Unfortunately, in response to Ernsdorff concerns, Mr. Merritt made the comment, "Whoever feels the need to go to HR on me, can go fuck themselves." Following this comment, Mr. Merritt invited Ernsdorff and the rest of the group to a strip club. Ernsdorff declined the invitation, but Mr. Merritt insisted, telling Ernsdorff: "Oh, come on." Mr. Merritt's badgering

became awkward to the point that Mr. Jake Jacobus stepped in and asked Mr. Merritt to stop asking.

21. As time passed, Ernsdorff continued to be talked down to and shouted at for "not collaborating" with Mr. Harsche. In fact, Chad Dombroski told Ernsdorff that Mr. Harsche had lied with the specific intent of excluding Ernsdorff, to which he added, "This is not good." However, shortly thereafter, Mr. Dombroski told Ernsdorff that Mr. Harsche would not change his behavior, but that Ernsdorff needed to start making steps to change hers if she wanted to remain employed.

22. In October 2019, Ernsdorff sent an email to Mr. Dombroski about her discrimination and retaliation claims (which he acknowledged and agreed were valid).

23. In early November 2019, Ernsdorff had a phone call with the human resources manager, Celeste Cloyd, to discuss the claim of retaliation she had made previously.

24. Ms. Cloyd told Ernsdorff that Mr. Chuck Jacobus would "dismiss it," indicating that he wanted nothing to do with "HR issues."

25. Surprisingly, two days later, Ernsdorff learned that Mr. Chuck Jacobus terminated Ms. Cloyd. Before leaving, Ms. Cloyd shared with Ernsdorff that she was not able to forward Ernsdorff's retaliation complaint and told her to "watch herself" and "be careful."

26. After learning that HR had not forwarded her complaint, Ernsdorff sent the complaint directly to Mr. Chuck Jacobus. Ironically, Ernsdorff was presented with a performance improvement plan ("PIP") by Chad Dombroski the same day.

27. During Ernsdorff's tenure, she was never approached by anyone regarding her performance, and the PIP Ernsdorff was presented with had objectively unobtainable goals.

28. Following receipt of the PIP, Ernsdorff had many calls with management about her suspicions related to the PIP being unobtainable and given in retaliation for her complaints of discrimination and retaliation.

29. Shockingly, Ernsdorff's termination came in the wake of her internal complaints of racial and gender discrimination and only after she questioned why she was the only employee who was presented with a PIP.

30. Accordingly, it is reasonable to infer that the PIP given to Ernsdorff is misleading and was intended to cover up a discriminatory and retaliatory purpose in the decision to terminate her.

31. Ernsdorff's legitimate complaints of discrimination were ignored and she was discriminated against and terminated because of her gender and/or in retaliation for her complaints of discrimination.

## COUNT I
**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*.**
**Retaliation**

32. Ernsdorff realleges and incorporates all preceding paragraphs.

33. Ernsdorff engaged in protected activity by reporting racial discrimination.

34. Jacobus engaged in adverse employment actions against Ernsdorff for engaging in protected activities. Such adverse employment actions have been in the form of subjecting her to unfavorable terms and conditions of employment and termination. The adverse employment actions have materially and adversely affected Ernsdorff's overall terms and conditions of employment.

35. A reasonable employee would find Jacobus' retaliatory acts materially adverse and that such acts would dissuade a reasonable person from making or supporting a charge of discrimination.

36. Jacobus' retaliatory acts against Ernsdorff were a direct and proximate result of her protected activities.

37. That materially adverse acts alleged above directly and proximately caused Ernsdorff to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment and frustration.

38. Jacobus' retaliation against Ernsdorff was done with malice and reckless indifference to Ernsdorff's federally protected rights. Jacobus is therefore liable for punitive damages in an amount sufficient to punish Jacobus and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Ernsdorff prays for judgment against Jacobus on Count I of her Complaint, for a finding that she has been subjected to unlawful discrimination in violation of Title VII; for compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C §2000e-5(k); and for such other and further relief the Court deems just and proper.

## COUNT II
### Associational Discrimination

39. Plaintiff incorporates the allegations set forth in the paragraphs above as if fully set forth herein.

40. Plaintiff is an "employee," and Defendant is an "employer" under Title VII of the Civil Rights Act.

6

41. Plaintiff associated herself with various current employees of the Defendant who are members of classes of individuals who are protected by Title VII.

42. Defendant was aware of Plaintiff's association with the above-referenced employees.

43. Shortly after Plaintiff complained about the above-referenced employees' behavior, Defendant terminated Plaintiff's employment.

44. As a direct and proximate result of Defendant's conduct, Plaintiff has incurred substantial damages.

45. Additionally, Defendant's conduct in this regard was wanton and willful and warrants an award of punitive damages.

WHEREFORE, Ernsdorff prays for judgment against Jacobus on Count II of her Complaint, for a finding that she has been subjected to unlawful discrimination in violation of Title VII; for compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C §2000e-5(k); and for such other and further relief the Court deems just and proper.

## COUNT III
**Gender Discrimination in Violation of the Missouri Human Rights Act**

46. Ernsdorff restates and incorporates by reference all preceding paragraphs of this petition.

47. Ernsdorff is a member of a protected class, and as a result of the actions of the Defendant was treated differently and less favorably than other male employees. Accordingly, the Defendant illegally discriminated against Ernsdorff because of her gender.

48. As a direct and proximate result of Defendant's conduct, Ernsdorff has and will continue to sustain damages in the form of lost income and garden variety emotional distress.

49. Defendant's conduct was outrageous due to its evil motive and/or reckless disregard for Ernsdorff's rights, entitling her to punitive damages.

WHEREFORE, Plaintiff, Cristine Ernsdorff, prays for judgment against Defendant for her actual and punitive damages in an amount that is fair and reasonable, together with her costs and reasonable attorneys' fees, and for any other remedy that the Court deems equitable.

## JURY DEMAND AND PLACE OF TRIAL

Ernsdorff respectfully requests a trial by jury on all issues so triable in Kansas City, Missouri.

## DESIGNATION OF PLACE OF TRIAL

Ernsdorff respectfully requests that trial in this matter be held at the Charles Evans Whittaker U.S. Courthouse, 400 E. 9th Street, Kansas City, MO 64106.

HKM EMPLOYMENT ATTORNEYS LLP

/s/ *John J. Ziegelmeyer III*
John J. Ziegelmeyer III        MO No. 59042
Brad K. Thoenen                MO No. 59778
1501 Westport Road

8

Kansas City, Missouri 64111
Tel: 816.875.3332
jziegelmeyer@hkm.com
bthoenen@hkm.com
www.hkm.com
ATTORNEYS FOR PLAINTIFF

Case 2:20-cv-02545-JWL-KGG   Document 1   Filed 11/02/20   Page 9 of 9